**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 3, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARCO DIONTE ATKINS,

    Defendant - Appellant.

No. 25-5012
(D.C. No. 4:24-CR-00051-SEH-1)
(N.D. Okla.)

_____

## ORDER AND JUDGMENT*
_____

Before **MATHESON**, **MURPHY**, and **FEDERICO**, Circuit Judges.
_____

This appeal arises out of a shooting that took place in the parking lot of the Tulsa Trip gas station and convenience store. Marco Atkins called out to Terry Brown, a former member of a rival gang, as Brown walked by Atkins' vehicle. Both men were armed. Atkins shot Brown in the torso,

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

injuring him severely. For this, Atkins was ultimately indicted for assault with a dangerous weapon with intent to do bodily harm in Indian Country; carrying, using, brandishing, and discharging a firearm during and in relation to a crime of violence; and four other counts related to witness tampering and obstruction of justice. Atkins was tried before a jury and was convicted on all counts.

On appeal, Atkins challenges the district court's purported error in failing to sua sponte exclude testimony from the Government's case agent about his review of the relevant security camera footage. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

On a late November night in 2023, Atkins' mother drove him and several others to the Tulsa Trip.[1] They were not there for long – less than five minutes – but those scant minutes proved to be troublesome and eventful. When Atkins arrived, all was peaceful; when he left, a man named Terry Brown laid on the ground, bleeding from multiple gunshot wounds. Security camera footage captured the entire affair.

---

[1] Because a jury convicted Atkins, "we draw the facts from the evidence presented at trial in the light most favorable to the government." *United States v. Schulte*, 741 F.3d 1141, 1144 (10th Cir. 2014).

2

The footage shows that Atkins arrived at the gas station in a large black SUV. After his mother parked the SUV in front of the convenience store, Atkins entered the store with the rest of his group. They stayed inside for about a minute before returning to the SUV. A few seconds later, Brown exited and stood on the sidewalk in front of the SUV.

It's not completely clear from the surveillance footage how Brown became entangled with Atkins' group from that point forward.  The footage shows that, shortly after Brown stepped outside, two members of Atkins' group, D'Andrick Moore and Le'Kysha Davis, got out of the SUV to re-enter the store, brushing by Brown along the way. Brown followed them inside where the three of them appeared to exchange words. When Moore and Davis returned to the SUV, Brown again followed them outside and began walking past the SUV, apparently on his way to the gas pumps.

At trial, Moore clarified the events involving Brown. Moore testified that, inside the store, Brown provoked them and appeared to be clutching something inside his coat pocket. Moore also testified that, after he and Brown exited the store, Brown continued to clutch something in his pocket and "egg[]" them on as he walked past. R. III at 180–81.

The security footage is clear about what happened next. When Brown reached the SUV's back wheel, he paused and turned to face the SUV. At

3

that moment, an arm extended out of the passenger door holding a gun. Shots were fired. Brown collapsed. Atkins and his group sped away.

Atkins was eventually indicted for assault with a dangerous weapon with intent to do bodily harm in Indian Country, 18 U.S.C. §§ 1151, 1153, 113(a)(3); carrying, using, brandishing, and discharging a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A)(iii); conspiracy to tamper with a witness, victim, or informant, 18 U.S.C. §§ 1512(k), 1512(b)(1), 1512(b)(2); two substantive counts of tampering with a witness, victim, or informant, 18 U.S.C. §§ 1512(b)(1), 1512(b)(2); and corruptly obstructing due administration of justice, 18 U.S.C. §§ 1503(a), 1503(b).

Atkins proceeded to trial and asserted a self-defense theory as to the assault and firearm charges. During the trial, Atkins testified in his own defense. He admitted to shooting Brown four times and claimed that Brown had threatened members of his group, pulled a gun, and pointed it at him.

However, there was conflicting evidence on whether Brown had pulled his gun prior to the shooting. Brown testified at trial and denied that he did so. Moore and Ezedrick Evans, another person at the scene, testified that they did not witness the shooting, but that Brown wasn't acting threatening and that there wasn't an altercation prior to the shooting. Atkins' sister,

4

though, testified and corroborated Atkins' account that Brown had pulled out his gun first.

Significant to this appeal, the Government's case agent, Ben Nechiporenko of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), was called as a witness to testify about the Government's investigation. Agent Nechiporenko largely testified about actions taken by Atkins following Atkins' arraignment on the assault and firearm charges, which were relevant to the tampering and obstruction charges brought against Atkins. However, at the beginning of Agent Nechiporenko's direct examination, the Government asked him some questions concerning the security camera footage taken at the Tulsa Trip as well as his knowledge of whether Brown had been armed:

> Q. [W]ere you aware of the surveillance footage, both inside and outside of the Tulsa Trip?
>
> A. Yes.
>
> Q. Had you reviewed it?
>
> A. Yes.
>
> Q. And in reviewing that footage, at that point in time had Terry Brown admitted to anybody that he was in possession of a firearm?
>
> A. Not to my knowledge.
>
> Q. From your review of the case and watching that internal video, did you have a belief that he could have been carrying a firearm?
>
> A. Didn't see one.

Q. But based upon – you know, the jury's heard some evidence of clutching or – or moving. Were you aware of that, or do you recognize that when you first started to watch some of those videos?

A. Yes, there's that one portion of the video where it looks like he reaches into the inside of his coat. That certainly could have been it.

Q. And so, were you aware of the fact that Mr. Brown also could have been armed with a firearm, uh, when the complaint was being pursued?

A. Yes.

Q. And in watching that external video, did that change your opinion at all?

A. No.

R. III at 418–19.

Agent Nechiporenko also testified about jail phone calls between Atkins and his mother, wherein Atkins mentioned possible trial defenses he discussed with his attorney, including claiming someone else shot Brown and self-defense. Agent Nechiporenko testified that Atkins told his mother during one of the calls that self-defense wouldn't work.

Following closing arguments and deliberations, the jury convicted Atkins on all charges. The district court sentenced him to 180 months imprisonment and five years of supervised release. This appeal timely followed.

## II

We will now examine the only issue Atkins raises on appeal. Atkins asserts that the district court plainly erred under Federal Rule of Evidence 701(b) when it permitted Agent Nechiporenko to testify that the security camera footage, combined with his knowledge that Brown may have been armed, did not change his opinion that Atkins should be prosecuted. Atkins argues that this constituted lay opinion testimony and was unhelpful to the jury because it boiled down to the Government telling the jury that Atkins was guilty. Essentially, according to Atkins, Agent Nechiporenko "told the jury that, in his opinion, the video footage provided no basis to acquit" him. Op. Br. at 18.

Atkins did not object to this testimony during the trial so we must review for plain error. *United States v. Moya*, 5 F.4th 1168, 1188 (10th Cir. 2021). We will reverse on plain error only if (1) there was error, (2) the error was plain, (3) the error affected the defendant's substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* It follows, then, that we may affirm on any prong. *See id.*

Here, we assume without deciding that Agent Nechiporenko's testimony plainly violated Federal Rule of Evidence 701(b) and hold that this presumed error did not affect Atkin's substantial rights. "A defendant's

substantial rights are affected 'when the defendant demonstrates that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *United States v. Maryboy*, 138 F.4th 1274, 1287–88 (10th Cir. 2025) (citation omitted). We must ask if "the jury would still have convicted [Atkins] . . . without the error." *Id.* at 1288. But first, we will briefly discuss Rule 701(b).

"If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed. R. Evid. 701(b). This rule aims to exclude testimony "where the witness is no better suited than the jury to make the judgment at issue, providing assurance against the admission of opinions which merely tell the jury what result to reach." *United States v. Brooks*, 736 F.3d 921, 931 n.2 (10th Cir. 2013) (quoting *United States v. Meises*, 645 F.3d 5, 16 (1st Cir. 2011)); *see also United States v. Bush*, 405 F.3d 909, 917 (10th Cir. 2005) (affirming district court's admission of testimony from detective identifying defendant's voice on a recording where jury had no opportunity to hear defendant's voice because he did not testify during trial).

During his testimony, Agent Nechiporenko did not say that Atkins should be prosecuted or that he is guilty. But even assuming an inference that Agent Nechiporenko opined that Atkins was guilty in plain violation of

8

Rule 701(b), Atkins was not prejudiced because he failed to establish a reasonable probability that the jury would not have convicted him absent Agent Nechiporenko's testimony.

Atkins admitted to shooting Brown, and only Atkins and his sister testified that Brown had pulled a gun first. Brown testified that he did not pull a gun, and two witnesses, Evans and Moore, testified that there was no altercation between Brown and Atkins' group prior to the shooting. Moore also testified that he didn't consider Brown to be a threat. Evans and Moore had nothing to gain from testifying against Atkins, as they weren't involved in the shooting either way. Finally, the jury heard Atkins discuss self-defense on phone calls with his mother and heard him tell her that the defense wouldn't work at trial.

The evidence of guilt here is, thus, substantial, and there isn't a reasonable probability that Agent Nechiporenko's testimony about Atkins' guilt tipped the scales in the Government's favor.[2] In fact, Agent Nechiporenko never testified that he continued pursuing charges against Atkins despite being aware that Brown had pulled a gun and pointed it,

---

[2] Agent Nechiporenko's testimony on this point was irrelevant to the three other charges related to witness tampering and obstruction of justice brought against Atkins. The events underlying those counts occurred after a criminal complaint had been filed against him. Thus, any error arising from this testimony did not affect Atkins' substantial rights as to those counts.

instead, he merely answered "[y]es" when the Government asked him if he was aware that Brown *could have been armed*. R. III at 419. Indeed, it was undisputed at trial that Brown had been armed – a fact crucial to Atkins' self-defense theory – so it's not clear to us that Agent Nechiporenko's testimony hurt Atkins' case at all.

Furthermore, we note that there isn't any indication in the record that the Government mentioned Agent Nechiporenko's testimony in support of its closing arguments as to self-defense. *See United States v. Griffith*, 65 F.4th 1216, 1220 (10th Cir. 2023) ("[W]hen the prosecution uses closing argument to emphasize the disputed evidence, that emphasis could suggest an impact on the outcome."). Nor is there any indication that the jury struggled with the question of self-defense in particular – in fact, the jury reached a verdict on all eight charges across two defendants after less than four hours of deliberating. While an indication that the jury struggled is not necessary to find prejudice, we think, in this case, it is at least indicative that the evidence against Atkins was strong. Because Agent Nechiporenko's

testimony did not affect Atkins' substantial rights, we have no basis to reverse.

AFFIRMED.

Entered for the Court


Richard E.N. Federico
Circuit Judge